```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

WINCHESTER INDUSTRIES, INC.,    :
JOHN DEVANNEY AND KARIANNE
GRANTMEYER,

            Plaintiffs,

v.                              :       No. 3:06-cv-858 (AHN)


SENTRY INSURANCE, A MUTUAL
COMPANY AND PATRIOT GENERAL
INSURANCE COMPANY,
                                :
            Defendants.


## RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

This case involves a dispute over insurance coverage for a fatal motor vehicle accident. The plaintiffs, John Devanney ("Devanney") and Winchester Industries, Inc. ("Winchester") sued the defendants, Sentry Insurance Company and its subsidiary company, Patriot General Insurance Company (collectively, "defendants") for breach of contract and malpractice by the defendants' insurance agent. The defendants now move for summary judgment [doc. # 46] on the breach of contract claim and on their counterclaim for a declaratory judgment that they have no duty to defend or indemnify Devanney or Winchester.

## FACTS

The following facts are not in dispute. Devanney and Joseph Grantmeyer ("Grantmeyer") were involved in an accident at the intersection of Route 44 and Route 181 in Barkhamsted,

Connecticut on August 7, 2005. Devanney, an officer of Winchester, was driving south on Route 181 in a 1992 Chevy Blazer ("Blazer") owned by Winchester. Devanney pulled away from a stop sign at the intersection of Route 44 and Route 181 and proceeded across Route 44. Grantmeyer was heading west on Route 44 on a 2003 Kawasaki motorcycle. Grantmeyer collided with the side of Devanney's vehicle and was killed.

At the time of the accident, Winchester was the named insured on a commercial insurance policy issued by the defendants. The policy contained the following: 1) commercial property coverage; 2) commercial general liability coverage; 3) commercial auto coverage; and 4) commercial umbrella coverage ("umbrella policy"). Linda and John Devanney ("the Devanneys") also obtained a personal automobile liability insurance policy through USAA for the Blazer.[1] That policy was also in effect at the time of the accident and provided coverage of $100,000 per occurrence.

The Devanneys notified the defendants of the accident. On October 7, 2005, the defendants advised the Devanneys by letter that they were investigating the claim under a reservation of rights. A month later, the defendants notified the Devanneys that they denied coverage for the accident under the commercial

---

[1] USAA assumed the defense of Devanney and Winchester in a state court lawsuit brought against them by the deceased motorcyclist's wife, Karianne Grantmeyer.

auto portion of the policy.  That portion provides:

| Coverage | Covered Auto Symbol* | Limit |
|---|---|---|
| Liability | 08,09 | $500,000 combined single limit |

> \* See pages 001 and 002 of business auto coverage form CA 0001 for a description of covered auto designation symbols.

On page 002 of the policy, Covered Auto Symbols 08 and 09 are defined as follows:

> 8 - Hired "Autos" only: Only those "autos" you lease, hire, rent, or borrow.  This does not include any "auto" you lease, hire, rent or borrow from any of your "employees" . . . or members of their households.
>
> 9 - Nonowned "Autos" only: Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business.  This includes "autos" owned by your "employees" . . . or members of their households but only while used in your business or personal affairs.

The policy only provided coverage for hired or non-owned autos. The Blazer was not covered because Winchester owned it.

On December 12, 2005, the defendants sent a letter to Devanney, stating that, after review by "upper management," the defendants would cover Devanney's claim under the umbrella policy.[2] The defendants advised Devanney that the $2 million umbrella coverage would apply as excess insurance when the primary $100,000 USAA policy limit was exhausted.  Thus, Devanney

---

[2] The defendants failed to mention this letter and did not submit a copy of the letter as an exhibit to their motion.  In their reply brief, however, the defendants admit that the letter exists and they sent it to Devanney and Winchester.

3

would have up to $2.1 million available to cover the accident.

On January 10, 2006, Karianne Grantmeyer, individually and as administratrix of the estate of Joseph Grantmeyer, filed a lawsuit against Winchester and Devanney in state court. The next day, the defendants informed Devanney that they did not have all of the coverage information available at the time that they determined that the umbrella policy afforded coverage for the accident. The defendants explained that an endorsement to the policy specifically excludes coverage for a vehicle owned by the insured (Winchester) that causes property damage or bodily injury. That particular endorsement (UB 70-20-07-98) provides:

EXCLUSION - AUTOMOBILE POLICY

> This endorsement modifies insurance provided under the following:
>
> UMBRELLA LIABILITY COVERAGE PART
>
> The following exclusion is added to Section II - Exclusions:
>
> Unless the underlying insurance therefore is available to the insured at the limits shown in the Declarations, this insurance does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance, use, or entrustment to others of any "auto" owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."
>
> This exclusion does not apply to:
>
> 1. Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured; and
>
> 2. "Bodily injury" or "property damage" arising out of

> the operation of any of the equipment listed in
> paragraph f.(2) or f.(3) of the definition of "mobile
> equipment."

On January 17, 2006, the defendants received a copy of the lawsuit that Karianne Grantmeyer filed in state court against Devanney and Winchester. Two days later, the defendants notified Winchester and Devanney that they refused to defend or indemnify them in the underlying lawsuit because there was no coverage in the policy for the loss.

## PROCEDURAL BACKGROUND

The case was removed from Litchfield Superior Court on June 2, 2006. In count one of the complaint, the plaintiffs allege a breach of contract claim against the defendants. In count two, they allege a claim for malpractice against Gail Charette, the insurance agent employed by the defendants who handled the renewal of Winchester's commercial and umbrella insurance policies.[3]

On August 31, 2007, the defendants filed a counterclaim, seeking: 1) a declaratory judgment that they had no obligation to defend or indemnify Winchester or Devanney in the underlying state court lawsuit filed by Karianne Grantmeyer; and 2) a declaratory judgment that the defendants had no obligation to

---

[3] The plaintiffs amended their complaint on June 12, 2007 to include plaintiff Karianne Grantmeyer and defendant Patriot, the subsidiary company of Sentry that issued the policies in question.

5

indemnify Winchester or Devanney for any claims arising out of the death of Grantmeyer.

## STANDARD

A Rule 56 motion for summary judgment may be granted if the court determines that the moving party is entitled to judgment as a matter of law because there are no genuine issues of material fact to be tried. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 883-85 (1990); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).

In considering a Rule 56 motion, the court's responsibility is not to resolve disputed issues of fact, but rather to assess

whether there are any factual issues to be tried, while resolving all ambiguities and drawing all reasonable inferences against the moving party. See Knight v. United States Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995).

## DISCUSSION

The defendants argue that neither the commercial liability policy nor the umbrella policy provides coverage for the accident. Devanney and Winchester argue that the umbrella policy is ambiguous and thus the court should construe it to provide coverage.

A. Breach of Contract/Declaratory Judgment

Winchester and Devanney concede that there is no coverage for the accident under the commercial auto portion of the policy. But the umbrella policy, they argue, is ambiguous to the point that even the defendants' senior claims supervisors were confused about whether it provided coverage for the accident. Winchester and Devanney further argue that because the policy is ambiguous, the court must construe it in their favor to afford coverage for the accident. The court disagrees.

7

In Connecticut, an insurance policy is interpreted in the same manner as any contract and is enforced based on the language of the policy. See Enviro Express, Inc. v. AIU Ins. Co., 279 Conn. 194, 199 (2006). The insurance policy must be construed in its entirety, with all of its relevant endorsements, exclusions and provisions "considered in connection with one another." Firestine v. Poverman, 388 F. Supp. 948, 951 (D. Conn. 1975). If the defendants created a specific exclusion for a type of liability for which it was unwilling to provide indemnity, it is their burden to prove the exception to the risk. See id.

As for the language of the policy, "[u]nder well established rules of construction, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." Enviro Express, 279 Conn. at 199. An insurance contract is ambiguous if the language "is susceptible to more than one reasonable interpretation." Cantonbury Heights Condo. Ass'n, Inc. v. Local Land Dev., LLC, 273 Conn. 724, 735 (2005).

Winchester and Devanney argue that the umbrella policy provides coverage because it is ambiguous with respect to the amount of underlying insurance that must be maintained before coverage is triggered. Their argument relies heavily on the December 12, 2005 letter from the defendants that stated they had determined, after a review of the policy by "upper management,"

8

there was coverage for the accident.  This argument is without merit.

    The basic flaw in this argument is that the defendants' claims examiners involved in the coverage determination admitted that the sole reason they found coverage in the umbrella policy for the accident was because they failed to read the auto liability exclusion attached to Winchester's policy.  Indeed, the claims examiners reviewed a "specimen," or generic, umbrella policy rather than Winchester's specific policy with all of its applicable limiting endorsements.  The defendants based their initial decision on the following umbrella policy provision:

    2. . . .

        b. If the underlying insurance does not apply to the
        "occurrence," we shall be liable for:

        (1) "Costs" and
        (2) "Damages" in excess of the amount stated in
        the Declarations as the retained limit.

On the Declarations page of the umbrella policy, under "Retained Limit," the policy stated "none."  The retained limit is the maximum amount an insured would have to pay before the umbrella coverage is triggered if no underlying coverage is available for an occurrence.  Even though the underlying commercial auto policy did not apply to the accident, the defendants reasoned that this provision triggered the umbrella policy because there was no specified retained limit.  Based on this incomplete information, the defendants stated that the $100,000 USAA policy provided

9

underlying coverage before the umbrella policy would be triggered, and therefore it would cover any amount over $100,000.

The defendants' failure to review the proper endorsements does not render Winchester's policy ambiguous. The court must construe the policy in its entirety, including all endorsements that may limit coverage. See Firestine, 388 F. Supp. at 951. The auto liability endorsement expressly excludes coverage under the umbrella policy for damages arising from the use of an auto owned by the insured, "unless the underlying insurance . . . is available to the insured at the limits shown in the Declarations [$500,000]." Winchester, the insured corporation, is the registered owner of the Chevy Blazer involved in the accident. The underlying commercial liability policy does not cover autos owned by Winchester in any amount, much less the $500,000 amount required to trigger the umbrella policy. This gap in coverage makes the umbrella policy inapplicable. Therefore, Winchester and Devanney's argument on this issue fails.

B. Expectations of the Insured

In further support of their breach of contract claim, Devanney and his wife, Linda, who also works for Winchester, argue that it was their understanding that all autos owned by Winchester would be insured in addition to all of their employees' autos, if the employees were to use the autos to run an errand for the company. They contend that the defendants'

insurance agent failed to provide them with adequate insurance based on their expectations of coverage when the defendants initially issued the policy. The court disagrees.

If the court finds that the language in the policy is ambiguous, the court may "consider the reasonable expectations of the insured," Jurrius v. Maccabees Mut. Life Ins. Co., 587 F. Supp. 1301, 1304 (D. Conn. 1984), and then only if such expectations are "objectively reasonable from a layman's point of view." Cody v. Remington Elec. Shavers, 179 Conn. 494, 497 (1980). In this case, however, there is no ambiguity in the policy language and therefore the court cannot consider the objective coverage expectations of the policyholders. See Cody, 179 Conn. at 497. In addition, insureds are required to know the terms and conditions of their own insurance policy. See Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 122-23 (2d Cir. 1990). If Devanney or his wife had reviewed the policy, they would have known that Winchester's autos were not insured. The court cannot create coverage for a claim based on the Devanneys' expectations when the policy clearly did not cover the Blazer or any other auto that Winchester owned. Accordingly, this argument fails.

C. Estoppel

Insofar as the plaintiffs argue that they have a claim for coverage by estoppel, no such claim is stated in their complaint.

The two elements of estoppel are that a party "must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." Heyman Assocs. No. 1 v. Insurance Co. of Pa., 231 Conn. 756, 778 (1995). In addition, a party who claims estoppel against his opponent "must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." Spear-Newman, Inc. v. Modern Floors Corp., 149 Conn. 88, 91-92 (1961) (citations omitted).

Though estoppel need not be specifically pleaded, Winchester and Devanney must at least allege facts in their complaint on which a claim for estoppel could lie. See Jenkins v. Indemnity Ins. Co., 152 Conn. 249, 255-56 (1964). Here, the defendants' motion for summary judgment is based in part on count one of the complaint, which sounds in breach of contract. The court cannot infer an estoppel claim based on the facts in that portion of Winchester and Devanney's complaint,[4] nor can they raise this claim for the first time in their opposition to the motion for

---

[4] The facts contained in count two of the complaint pertain to a claim of insurance malpractice against the agent in charge of the renewal of Winchester's policy. Count two also fails to allege facts that would give rise to a claim of estoppel.

12

summary judgment.  See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) (holding that a party may not raise a new claim in its response to a dispositive motion).  Further, Linda Devanney, who was in charge of procuring insurance for Winchester, stated as follows:

> Q. If you had told [Sentry's agent] that the company owned vehicles, he would have done something about it; is that what you are saying?
>
> A. I would assume, yes.
>
> Q. And so does that mean you assume that you did not tell him anything?
>
> A. I assume that I did not.
>
> . . .
>
> Q. And just so we are absolutely clear, no one from Sentry ever told you that you would have coverage.  It was an assumption you made, concern [sic] my [sic] borrowed vehicles that the employees might use?
>
> A. Yes, sir, that is correct.

It does not seem that the defendants intended to induce the Devanneys to believe there was coverage for Winchester's autos.  In addition, Devanney and Winchester deposed Andy Aldo, the defendants' insurance agent who initially procured insurance on Winchester's behalf.  He could not recall any specific conversations he had with Linda Devanney, much less one that involved autos owned by Winchester.  In addition, the Devanneys could have discovered the lack of coverage for Winchester's autos if they had reviewed their insurance policy.  See Spear-Newman,

13

148 Conn. at 91-92. Accordingly, Winchester and Devanney have not made out a claim for coverage by estoppel, either in their response to the motion for summary judgment or in their complaint. Hence, there is no coverage under any of the policies issued by the defendants.

## CONCLUSION

For the foregoing reasons, the defendants' motion for partial summary judgment [doc. # 46] is GRANTED.

SO ORDERED this _6th_ day of February 2008, Bridgeport, Connecticut.

_____/s/_____
Alan H. Nevas
United States District Judge